I am pleased to court Glenn Lewis for the appellants Jenny Hong and Jackie Ji. There were three issues we brought up on appeal. The first one is the most important one. It's the judge withdrew the jury instruction regarding determination of separate liability for each defendant. The second issue was an improper instruction regarding the elements of retaliation. And the third issue we brought up was the good faith defense being given to the jury instead of the judge deciding it. And I'll address the first issue because that's the most important one about determination of separate liability for each defendant. There were four defendants in this case. Jenny Hong, the ex-wife of the husband Jackie Ji, who owned two businesses, a massage business and a restaurant business. And these two businesses were completely separate. They did not share employees. The employees were compensated differently. The massage employees were compensated through basically independent contractors. They shared their revenue with the owner, Mr. Jackie Ji. The restaurant employees were paid hourly. Was there an objection below made with regard to the jury instructions and the special verdict form? Are we on plain error review? Not an express objection, but there was a discussion. I set it in the record where the judge brought up his own objection. He said, well, I'm reluctant to withdraw this objection. And the plaintiff's counsel said, well, you can withdraw it because there's a single enterprise admission, that the judge has jurisdiction over this entire case because of the single enterprise test. And that's a jurisdictional requirement. That's not a joint and several liability test. And there you just look at the revenue of the two businesses. And if they're big enough, then the court has jurisdiction over this, of these two businesses. That's a totally separate test than imposing. Are we on plain error review on these issues? There's two issues there. I mean, I cited a case in the standard review. First, yes or no? If you want to explain that, that's fine. But I want to pin down the standard review. Are we on plain error review on these issues? I say no in regards to joint liability because there is a case saying when you impose joint liability, that's a de novo review. And I cited a case in the standard review. I don't have it on the tip of my tongue. But there is a case saying it's a question of law whether or not to impose joint liability. So that would be de novo under my interpretation. And there, and I'll just go through the plain, like, common sense reasoning why this is improper instruction. Because Ms. Hong, there was no evidence presented that Ms. Hong was, had any interaction really with the spa employees. She said she testified she folded towels and stuff like that. But she never gave out paychecks. She never directed them to do in any substantial manner. And her ex-husband, Jackie G., was the one who paid the employees, did all that stuff. But didn't you have some record show some hiring and firing authority or taking time off? I think there was evidence presented that Ms. Hong did fire one, did hire, I'm sorry, she never fired anyone. She did hire one of the restaurant employees while Mr. Jackie G. was in China or something like that. So that was a one-off instance where she had one employee. And that was the only instance where she exercised some management authority. I think that was the only evidence there. What about, there's some incident about taking time off, right, where she made the decision? I mean, employees taking time off? There may have been some testimony regarding that. But like I said, the real management control was under her ex-husband. He's the one who hired and fired. He's the one who set the payroll, gave out the paychecks. She's not the one who set the payroll and gave out the paychecks. He wrote all the paychecks. She may have handed out some paychecks at some point when Mr. Jackie G. was gone. But she was not the one who wrote the paychecks. There's no testimony regarding that. And why it's important to test each liability of each defendant separately is because the jury instructions just said, is Jenny Hong an employer of both the restaurant and the massage store? It didn't say, are you the employer of the massage store? Are you the employer of the restaurant? It didn't ask those two questions separately. And the jury could have analyzed each separately, because like I said, they didn't share employees. They were compensated differently. They did entirely different kinds of things. To me, there's something, maybe you can straighten me out, but inconsistent between the single enterprise requirement, right, for jurisdictional purposes, and then once that's established, I gather that's not even contested. Once that's established, you say, well, you know, in effect, they're separate enterprises, the massage parlor and the restaurant. Is that what you're arguing? Well, yes. Isn't that inconsistent with the single enterprise theory of jurisdiction? Well, they have two different, I don't know the exact requirements of each element of the single enterprise test, but I know a court did address this issue. Are these two tests the same? And the court said, no, they are not the same tests. And I cited a case in the brief saying there are entirely two separate tests, and there's a specific test you go through to impose the joint employment liability, and that's 29 CFR 791.2, and it's very specific as to how you apply that test. And the main requirement is, are these employees benefiting both employers? Are the restaurant employees benefiting the massage parlor in some way? And there's no evidence that any of the restaurant employees benefited the massage parlor or vice versa. And that's the primary test you would do to impose joint liability for, like, a joint employer. So I would say, like, for instance, there's a case where you have two restaurants and the employees switch back and forth between the two restaurants. There you have a joint employment situation, and it's appropriate to impose joint liability on the two employers for the employee. But that's not the case here. There's no evidence that massage employees work for a restaurant or vice versa. There's nothing like that. And I'd like to go quickly to the retaliation claim, because I think this is compounding the errors made here.  You only need to fear adverse employment action. You don't need to actually have adverse employment action occur. And there the employees testified, well, when we were going to testify with the labor commissioner, my employer told me, don't say something randomly. Don't say too much. And the jury read the instruction and said, well, when the employer, Jackie G., said that to the employees, that was an adverse employment action. And there's no case that I'm aware of that could ever support that determination. You can't. What was the specific comment that it turned on? Well, there's three separate things. One employee testified that the employer told him, don't say anything randomly. And one employee said, the employer told me, don't say too much. And then one employee said, oh, the employer made me sign a falsified wage statement. And I feared that if I signed this, I'll be fired. If I did not sign it, I'd be fired. But there's no testimony at all saying, well, if you don't do this, I'm going to terminate you. And there are cases saying, well, if you threaten to terminate someone, that might constitute an adverse employment action. But here, there's no testimony regarding any threats. But isn't it implicit? I don't think you can make that argument. That's a good question. The jury could reasonably infer that that threat of termination is implicit in that testimony. I don't think that you'd have to enter into the minds of the employee. And that's an entirely subjective test, then. Was that phrase in the retaliation instruction, was it argued to the jury by either side? It was not objected to. No, but I mean in the course of closing argument, was any argument made about that phrase? No. There's no objection to the instruction saying you only have to fear adverse employment action in order to satisfy the elements of retaliation. But this is plain error. To say that if you fear something might happen to you, that constitutes adverse employment action. Even though no threats were made, and the only thing the employer told you is, don't say anything randomly, don't say too much. I mean, an employer telling you don't say too much, that doesn't mean that they're going to terminate you if you say too much. It doesn't mean that under any common sense interpretation. And then the third issue is the good faith defense. And that, the courts are all over the place regarding that issue, but the statute's clear. It says that the good faith defense, whether or not you were paying the employees, whether you had good faith in paying the employees, whether you actually believed you were paying them the correct amount, should be determined by the judge. And that's in the statute. And the courts have reached different reasonings on this. So he asked the jury for a little help. Yeah. That goes, that's the other side's argument. It's like when I ask for an advisory jury. I like their advice, but ultimately it's my decision. That's correct. Ultimately it was his, right? That's correct. But then he didn't treat it as advisory when he read off his ruling. He just said, well, look, the jury just said they're guilty of willful violation of the statute, so I'm going to double the damages. He didn't say, well, I'm taking this into account and I'm going to think about it. He just said. He didn't say the magic words and having carefully analyzed their decision here, I'm going to agree with it? Well, he didn't even. It's just totally perfunctory. He just said, well, jury said it's willful. I'm going to double the damages. This is much like the argument in the last case, isn't it? You're saying the judge has to give some affirmative indication that he's treating it as advisory. Isn't that what you're saying? Yes, or at least think about it. He didn't even think about it. The jury read their conclusions and five minutes later or three minutes later he says I'm doubling damages. So he didn't treat it as advisory in that sort of scenario. If he just reads it, says I agree, bunk, double damages. I just can't find it. He sat there. He's listened to the whole trial. He knows it. And the jury comes back and says what he agrees with, so he just. Well, I don't understand your real complaint here. Well, he shouldn't have submitted to the jury in the first place. When the statute says. There's no prohibition for him to ask the jury for a little help here. That's correct. That's correct. But that is that's not the main issue on appeal, though. The main issue on appeal is the separate. That's not your best argument. No, it isn't. It's my last argument. But the main issue on appeal is the separate determination for each defendant. You've got to separately determine the liability of each defendant. And that was not done here at all. And the same argument applies for Jackie G as well. He also appealed the case where the judge could have instructed the jury. Well, you look at the restaurant business. You look at the spa business. Did Mr. Jackie G. Did you have a good faith defense for either of them? Because the spa employees were compensated entirely differently. They were like independent contractors. So could he have had a good faith defense there? Because he was paying for the room and board. He was paying for the food. He was paying for the transportation. And he was sharing all the revenue with them. And the revenue fluctuated depending on how much they were making. So he could have had a better good faith defense there than rather than the restaurant. And we had no opportunity to raise that issue. If you just look at collective liability, saying, well, it's a single enterprise. So if one's liable, everyone's liable. But that's not the test. The test is it should have been a joint and several liability tests under the 29 CFR 791.2. And that would be the proper test to apply, whether or not these employees were jointly benefiting both employers. I think I've run over my time. You've got a little over a minute. Do you want to save that for rebuttal? I always save it. Okay. I'm just going to move this down a little bit. May it please the Court. Anne Webb for the Secretary of Labor. Just to address your question about the standard of review here. Defendants do not contest that they did not object to and, in fact, affirmatively agreed to the jury instructions in this case. So plain error is the correct standard of review for the jury instruction arguments. And as this Court has explained in City of Sonora, its en banc decision, explaining its interpretation of Rules of Procedure 51d.2, where no objection is preserved, this Court will consider whether there was an error, if that error was obvious, and whether that error affects substantial rights, which is quite a high bar. And on top of that already high bar, this Court will consider the cost to correct and will only correct a jury instruction where it finds clear plain error if review is needed to prevent a miscarriage of justice, which really requires a harm great enough to impair the fairness, integrity, or public reputation of judicial proceedings, which is simply not the case here. There is no plain error in the jury instructions as to individual employer liability or willfulness, and certainly no obvious error. This case was presented by both parties as to these two groups of employees together, and that is indicated in part by the stipulation from defendants that Mr. Hong, who we're calling Jackie here, was an employer along with the two business entities of all of the employees, all 82 employees who were listed on Trial Exhibit 18, which lists both groups of employees together but identified separately as to where they worked. But there was some, well, not only instruction, but it was contested as to whether or not the other defendant was an employer at all, right? That's correct. In fact, that was the only contested question of liability in general, was whether Jenny, who we also call Zhao, was an individually liable employer at the spa and the restaurant. So that was made clear. I think the DOL's position was kind of all or nothing, that she disputes whether she was an employee at all. And DOL took the position that, yes, she was an employee of all of the employees, regardless of which entity they worked for. And then the defendant's position was she wasn't an employee at all. But was there any room in the jury instructions for the jury to find that she was an employer, but of the employees of one enterprise versus the other? Any room in the jury instructions for that determination? Your Honor, the jury was instructed to determine whether she was an employer, and they were given Trial Exhibit 18 with both groups of employees. And they were also instructed to ensure that there was representative testimony to meet their findings for all of the employees. So in order to check the box on the verdict form that she was an employer, the jury needed to be sure that they had sufficient evidence that she was an employer of all of the employees, both the spa and the restaurant employees. You know, to treat them, them meaning, well, it, the spa business and the restaurant business, as separate businesses and separate employers, it almost contradicts, doesn't it, the single enterprise theory? Yes, Your Honor. The stipulation stated that both of the businesses were being operated as a single enterprise under common control and unified operation for a common business purpose. And the significance of that stipulation is that both parties were presenting, both to the court and to the jury, that these were a single enterprise with two establishments. Was the jury made aware of that stipulation? Yes, Your Honor. It was read to the jury just prior to the jury instructions. And I believe it was provided in writing as well. The significance there is that the jury and the court, you know, received this case, like I said, as a single enterprise with two establishments. And sufficient evidence was put on to prove her employer status as to both groups. So if they had not found her to be an employer of both groups, they would have needed to check no on the employer status. And just to touch briefly on the withdrawn instruction, instruction number 15, which my opposing counsel mentioned, that instruction would have advised the jury to consider each defendant's liability separately, which is exactly what the jury did. The first question on the verdict form was whether Jenny Zhao was an employer. And once she was determined to be an employer, all the parties agreed that the verdict form would then treat the word employer to include or defendant to include anyone who had been determined to be an employer. And after that point, it was proper for the jury to consider the defendants collectively in determining their liability. Can you address defendant's argument on the retaliation claim? Yes, Your Honor. This court, excuse me, the court in Burlington Northern, the Supreme Court, explained that when determining adverse employment action, the court should look to what a reasonable employee would understand in the circumstances of that workplace. And it recognized that the question is whether a reasonable employee would find the action materially adverse. And our view here is that defendants created a an environment in both work sites where employees understood that if they didn't comply with the order to not speak to the Department of Labor, to lie to the Department of Labor, to create falsified records for their employer, that they would they would suffer some adverse action. Let me let me back up a little bit. First of all, was this instruction, instruction tendered by you, by the department? Your Honor, the... Or did the court make this up on its own? I know the plaintiff didn't ask for it. The court didn't make it up, but the proposed jury instructions were offered jointly. So they were offered by plaintiffs. Is this a standard DOL instruction, do you know? Do you use this in a lot of cases? Your Honor, to be totally frank, we don't have very many jury trials, so I don't know that we have a standard jury instruction on this issue. You see, my problem with this instruction is it really says some future action is an adverse action. It almost doesn't make sense grammatically, does it? Your Honor, in this case... Isn't that what it says, if you read the words of the instruction? It says that an employee may suffer an adverse employment action if they are afraid of some future action which would negatively affect the employee. Right. So fear of a future action is itself an action. Isn't that what it says? An adverse action? I don't... It doesn't make too much sense to me. And then in your argument, you just said now, one, under the Supreme Court case law, there has to be a finding that some action, you know, led to adverse consequences or fear of adverse consequences, or I think in this case you said an environment. Now, I don't know, what are you saying? Creating an environment could be an adverse employment action? Your Honor, there have to be... In this case, we're arguing there are two pieces. There is a direct action, which is telling each of these employees, Mr. Gao, Mr. Shin, and Mr. Wang, that they had to, that they should not exercise their right to speak with the Department of Labor and or that they should create falsified employment records. Well, it... That action was an implied threat. As Judge Duan said earlier, you know, I suppose you could construe that that kind of warning implies a threat, right? Exactly. All right. It implies a threat because they created the environment. And then the other part was what? You said there were two parts to it. The second part is the environment that was created. So several of the employees who testified said that other employees also believed that if they didn't comply with these orders that they would be retaliated against, either by withholding their last month of pay or some other adverse action. And so, you know... It's a threat that the employer would take some adverse employment action against you, like withholding your pay, cutting your hours, firing you. But the way it's phrased is really awkward. I don't dispute that the phrasing is somewhat awkward, but the facts in this case show that we have sufficient evidence to show that the employees were objectively reasonably afraid that they were going to experience an adverse action if they exercised their rights. What was... You know what was... If anything, was argued to the jury as to what constituted the adverse employment action in this case? Do you know? Your Honor, I don't want to misrepresent what was in the transcript, but what I recall is that it was argued that by ordering the employees not to... That the adverse action was ordering the employees not to exercise their right to communicate with the Department of Labor and provide accurate information about their hours worked to the Department of Labor. All right. Just to very briefly turn to the good faith argument. So that's the threat, but then what was the harm that was threatened? Well, the harm that the employees reasonably understood to be coming to them, for example, in Mr. Gao's case, was that he would not receive his last month of pay or that he would lose his job on the earlier time that he was ordered to create false records. And Mr. Shin affirmed on cross-examination that he felt intimidated and discouraged from speaking to the Department of Labor. So the harm was not being able to exercise their right to communicate with the department and also the fear that they would lose their jobs or lose pay. To turn very briefly to the good faith argument, just to clarify that the court did in fact exercise its discretion to determine whether liquidated damages were appropriate. The court stated as much, not in those words, but stated at the end of the trial that he expected that the secretary would request liquidated damages and he didn't see any reason not to award them, which indicates that the court understood that it retained discretion over that decision and in fact did exercise it. To turn very briefly to the jury instruction on willfulness, for the same reasons that we explained earlier, there was no manner in which this case was presented to the court that would have suggested that this issue needed to be decided for the spa and the restaurant employees separately. The facts here that underlie the willfulness determination are identical for both groups and defendant's counsel has asserted that these two establishments were operating entirely differently, that they had different pay systems and such, but really those facts make no difference to the willfulness determination here because the FLSA violations being carried out at both establishments were identical. They were failing to record hours. Regardless of the manner of pay, they were making no effort to determine that the pay met the minimum wage and overtime requirements. They failed to keep records until they were informed of that obligation by the Labor Department and then as soon as they learned of that obligation, they began to affirmatively falsify records and order employees to do as much. So there are sufficient facts in the record for the jury to have found that the parties were willfully violating the FLSA with the spa employees and the restaurant employees and a number of the facts overlapped to that matter. So it was reasonable to instruct the jury to consider the group as a whole. Thank you. Well, I have this. This is kind of a side question you don't have to answer if you don't want to, but you know whether this kind of verdict is, I'm just curious, dischargeable in bankruptcy? I don't know the answer to that question, Your Honor. All right. Thank you. Thank you very much. I'd just like to address the single enterprise. Well, one of my clients did declare bankruptcy, but it was not discharged for other reasons, which I won't go into. They wouldn't reach a determination of the merits, I'll say that. I want to address the single enterprise argument you have because I think that's very important. So the single enterprise is a jurisdictional requirement, and if these two enterprises were not put together, then the court would not have jurisdiction over this case. What do you do with your stipulation? Yeah. I mean, my clients did not speak English very well, and the attorney just stipulated to it that even if he did that and they didn't understand what they were doing, this stipulating that the court – All right. You were the trial lawyer? No, I was not. The trial lawyer stipulated to it, didn't he? Did he not? He did, but just because he did only is stipulating to the court's jurisdiction. I don't know about this judge, but when people stipulate, I say, ladies and gentlemen of the jury, no further evidence need be introduced on this issue. That's correct. So they stipulated that the court has jurisdiction, but that's different than stipulating we are jointly and severally liable for every employee here. That's a different sort of stipulation. Didn't he stipulate that the two were part of a single enterprise? Yes, but there that's a common control. So we admit that he owned both companies. He had common control over both. That's the only admission there, that he owned both companies. It's not admitting that his wife is jointly and severally liable for both employees of the spa and the restaurant. That's an entirely separate issue which is addressed by an entirely different statute, and that's a joint and several liability as opposed to a jurisdictional requirement. But it certainly indicates the possibility of a two musketeer operation, right? And if she can be proven to exercise control on either one of them, she's hooked on all. No, no. That's where the joint and several liability test comes into that. That's the joint employment situation where if one employer is controlling the restaurant and the employers are working for the other restaurant, yeah, they're jointly and severally liable. But that's not the situation here. Well, the problem for you is that it was really stipulated and tried that way by both sides. Yeah, I mean, that is a problem, that the jury was misled in regards to that, and they probably read the jury instruction saying, look, it's a single enterprise. Why don't we just impose liability on everyone? But that's not what was stipulated to. It was stipulated to that they have jurisdiction over this case, and we never agreed to withdrawing that jury instruction number 15.  All right. We've taken you over your time, but I think we've got the arguments from both sides pretty well in hand. I'll submit the matter. Thank you.
judges: Tashima, Nguyen, Walter